UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| JOSEPH "JOEY" E. DODD, JR, | ) | |
| | ) | |
|     *Plaintiff*, | ) | |
| v. | ) | No. 1:06-cv-56 |
| | ) | *Lee* |
| WOODS MEMORIAL HOSPITAL, | ) | |
| McMINN COUNTY JUSTICE CENTER, | ) | |
| SHERIFF STEVE FRISBIE, CHIEF TIM | ) | |
| SMITH, LIEUTENANT PENNI PALMER, | ) | |
| SERGEANT RICK CLAYTON, NURSE | ) | |
| KAY STANSBERRY, | ) | |
| | ) | |
|     *Defendants*. | ) | |

**MEMORANDUM**

**I.**    **Introduction**

*Pro se* Plaintiff, Joseph "Joey" E. Dodd, Jr. ("Dodd"), a prisoner when he filed suit, seeks damages from Defendants for deprivation of his civil rights under color of state law pursuant to 42 U.S.C. § 1983. Dodd's action arises from his incarceration at the McMinn County Justice Center ("Center") after being arrested on August 5, 2005. Dodd challenges his conditions of confinement in addition to raising a claim that Defendants were deliberately indifferent to his serious medical needs, deprived him of personal property, and subjected him to retaliation.[1] For these alleged constitutional violations, Dodd requests Defendants be held accountable and he seeks an

---

[1] The Court is unable to determine whether all of Dodd's claims arose while he was a pretrial detainee. Nevertheless, although the Eighth Amendment prohibition against cruel and unusual punishment applies only to those convicted of crimes, *see Ingraham v. Wright*, 430 U.S. 651, 671 n. 40 (1977), pretrial detainees "retain at least those constitutional rights ... enjoyed by convicted prisoners." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979). And, under the Fourteenth Amendment, the pretrial detainee's rights are analogous to the convicted prisoner's rights. *Barber v. City of Salem,* 953 F.2d 232, 235 (6th Cir. 1992).

1

unidentified amount of punitive damages.

Presently before the Court are: 1) Dodd's motion to strike/withdraw his previously filed affidavit [Doc. No. 36] and 2) a motion to dismiss [Doc. No. 47] filed by Defendants Woods Memorial Hospital ("Hospital") and Kay Stansberry ("Stansberry").[2] Dodd's motion to strike/withdraw his affidavit is **GRANTED** [Doc. No. 36].[3] While Dodd has not file a response in opposition to the motion to dismiss, he has carried his burden of pleading facts that, if true, demonstrate a constitutional violation with respect to the denial of medical care claims addressed in the pending motion to dismiss. For the reasons set forth herein, Defendants' motion to dismiss Dodd's medical claims [Doc. No. 47] will be **DENIED** and the parties will proceed to trial on September 10, 2007 on Dodd's claims.

## II.     Standard of Review and Screening

### A.     *Pro Se* Pleadings

*Pro se* pleadings filed in civil rights cases are liberally construed and held to a less stringent standard than formal pleadings drafted by lawyers. *McNeil v. United States*, 508 U.S. 106, 113 (1993); *Boag v. MacDougall*, 454 U.S. 364, 365 (1982); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991). However, *pro se* status does not exempt the plaintiff from the requirement that he comply with relevant rules of procedural and substantive law. *Hulsey v. State of Texas*, 929 F.2d 168, 171 (5th Cir. 1991); *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981). *Pro se* plaintiffs must comply with Rule 8 of the Federal Rules of

---

[2] Kay Stansberry is an employee of the Hospital, which is located in Etowah, Tennessee. The remaining defendants have not filed motions or pleadings addressing the pending motions.

[3] Dodd filed an affidavit stating he had received the Hospital and Stansberry's answer after the due date because they used the incorrect zip code.

Civil Procedure which provides that a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. *LRL Properties v. Portage Metro Housing Authority*, 55 F.3d 1097, 1104 (6th Cir. 1995). Although the standard of review is liberal, it does require more than the bare assertion of legal conclusions. *Lillard v. Shelby County Bd. Of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996); *LRL Properties*, 55 F.3d at 1103-04; *Allard v. Weitzman* (*In re DeLorean Motor Co.*), 991 F.2d 1236, 1240 (6th Cir. 1993); *Hartfield v. East Grand Rapids Public Schools*, 960 F. Supp. 1259, 1268 (W.D. Mich. 1997). The complaint must give the defendants fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Lillard*, 76 F.3d at 726; *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994). "In practice, a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Lillard*, 76 F.3d at 726 (citations and internal quotation marks omitted).

### B. Rule 12(b)(6)

Fed. R. Civ. P. 12(b)(6) provides a complaint may be dismissed if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is to permit a defendant to test whether, as a matter of law, the plaintiff is entitled to relief even if everything alleged in the complaint is true. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993); *Nishiyama v. Dickson County, Tennessee*, 814 F.2d 277, 279 (6th Cir. 1987). Rule 12(b)(6) requires courts to construe the complaint in the light most favorable to the plaintiff and accept all of the complaint's factual allegations as true. *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998); *Haines v. Kerner*, 404 U.S. 519 (1972); *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 228 (6th Cir. 1997); *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995), *cert. denied*, 516 U.S. 1158 (1996).

3

In order to preclude dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations which comprise all of the material elements necessary to sustain a claim for relief under some viable legal theory. *Lewis v. ACB Business Services, Inc*., 135 F.3d 389, 406 (6th Cir. 1998); *Columbia Natural Resources*, 58 F.3d at 1109; *Allard,* 991 F.2d at 1240; *Scheid v. Fanny Farmer Candy Shops*, *Inc*., 859 F.2d 434, 436 (6th Cir. 1988).

Recently, the Supreme Court revised the "no set of facts" portion of the Rule 12(b)(6) standard and dismissed an antitrust conspiracy complaint because it did not state a claim for relief that was "plausible on its face." *Bell Atlanta Corp. v. Twombly,* ___ U.S. ___, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007) (the complaint must contain sufficient factual allegations "to raise a right to relief above the speculative level" in order to avoid dismissal under Rule 12(b)(6)). *See also Erickson v. Pardus*, ___ U.S. ___, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007). The Sixth Circuit has noted "[s]ignificant 'uncertainty as to the intended scope of the Court's decision [in *Twombly*]' persists, however, particularly regarding its reach beyond the antitrust context." *Weisbarth v. Geauga Park District et al.*, ___ F.3d ___, 2007 WL 2403659, at * 3 (August 24, 2007) (quoting *Iqbal v. Hasty*, ___F.3d ___, 2007 WL 1717803, at * 11 (2d Cir. June 14, 2007) (applying the plausibility standard in the context of a motion to dismiss § 1983 claims based on qualified immunity) and citing *Collins v. Marva Collins Preparatory School*, No. 1:05cv614, 2007 WL 1989828, at * 3 n.1 (S.D. Ohio July 9, 2007) (noting that eight federal district courts in the Sixth Circuit have thus far applied *Twombly* in the manner discussed in *Iqbal* to require a pleader to amplify a claim with some factual allegations in those contexts where such amplification is need to render the claim plausible)). The Sixth Circuit has not yet issued an opinion addressing the nuances of *Twombly's* effect on the dismissal standard in cases such as this one, and the dispostion of this

4

matter does not depend on the nuances of *Twombly*.

The court is required to construe the complaint in the light most favorable to the plaintiff and to accept all well-pleaded allegations of fact as being true. *Scheur v. Rhodes*, 416 U.S. 232 (1974); *Columbia Natural Resources*, 58 F.3d at 1109; *Mayer*, 988 F.2d at 638; *Collins v. Nagle*, 892 F.2d 489, 493 (6th Cir. 1989). When a factual allegation is capable of more than one reasonable inference, it must be construed in the plaintiff's favor. *Saglioccolo*, 112 F.3d at 228; *Columbia Natural Resources*, 58 F.3d at 1109. A court may not grant a Rule 12(b)(6) motion to dismiss simply because the court does not believe the allegations of fact in the complaint. *Saglioccolo*, 112 F.3d at 228-29; *Columbia Natural Resources*, 58 F.3d at 1109; *Allard*, 991 F.2d at 1240. The court does not, however, have to accept as true mere legal conclusions and unwarranted inferences of fact. *Lewis*, 135 F.3d at 405; *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998); *Columbia Natural Resources*, 58 F.3d at 1109; *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

### III. Facts

Dodd makes several claims of deliberate indifference to his medical needs that span a period of several months. Dodd's claims are not in chronological order and the Court will address the claims in the order in which they are raised in the complaint. As noted above, the following allegations of fact are construed in the light most favorable to Dodd.

On or about August 5, 2005, Dodd was arrested and booked at the Center. While housed in the booking cell, Dodd made several requests to see a nurse because he was taking several medications prior to his arrest, two of which were to treat his heart disease. His requests were ignored and he never received any medical attention in response to these requests. During this eleven-day period, Dodd was coming off several medications and became very distraught. Due to

his behavior, an off-duty nurse came to see him and the nurse called the crisis unit but "a man" told Dodd to go back to his cell or they would strip him naked and put him in a paper robe for observation. Although the man told Dodd he would notify the nurse that Dodd needed his medication, Dodd never received his medication during this eleven day period.

Dodd was denied any medication August 5-17, 2005, despite making several requests for medical treatment. Dodd was moved to a sixty man dorm on or about August 17, 2005. When he inquired about receiving his medications, the nurse instructed that his medication must be delivered to the jail.

On or about August 24, 2005, Dodd's mother delivered his medications (high blood pressure, cholesterol, and two heart medications) to the jail. Although Dodd had been on medication for pain, depression, and sleep, his mother did not bring these medications. Dodd was eventually prescribed 800 mg. of ibuprofen to be administered at 9:00 p.m. for his pain. After requesting a medical visit with the doctor for two months, an appointment was finally scheduled and the doctor instructed Stansberry to obtain Dodd's medical records. At that time, an additional dose of ibuprofen was prescribed to be administered at 9:00 a.m. but Dodd had to submit several request forms before both doses of ibuprofen were administered to him.

From October 2005 until February 15, 2006, Dodd's pain increased and became debilitating, affecting his left side and causing great mental and physical agony. Dodd sent over two dozen request forms to Stansberry requesting to see the doctor but Dodd's requests were ignored. Dodd claims that when he sent Stansberry a request form she retaliated by ceasing his two doses of ibuprofen. Dodd claims that when he ceased sending request forms, Stansberry resumed his morning dose of ibuprofen and a few days later she would also resume his evening dose.

6

Dodd ran out of his heart, cholesterol, and blood pressure medicine in September 2005. Apparently Stansberry ordered his cholesterol and blood pressure medicine but not his heart medicine. Dodd told Stansberry he could not afford $10.00 a month so she stopped the medication. Dodd was charged $10.00 for November and December of 2005 for medications he did not receive. Dodd sent several requests to Stansberry, Sgt. Rick Clayton ("Clayton"), and Lt. Penni Palmer ("Palmer") requesting that the $20.00 be re-deposited into his account and requesting an appointment with the doctor because of the pain in his face, ear, neck, arm, and back but he never received a response to his requests. However, his two doses of ibuprofen were stopped. Once he stopped sending requests, his ibuprofen doses were resumed.

From January 28, 2006 through February 15, 2006, Dodd sent four requests to Stansberry and Clayton requesting to see the doctor about his increasing pain and sickness. Dodd received no response to his requests other than receiving neither dose of his ibuprofen February 10-13, 2006. Dodd's morning dose was resumed on February 14, 2006, but as of February 15, 2006, the date he filed this complaint, he still had not received his evening ibuprofen dose.

### IV. Analysis

At the outset, the Court concludes the Center, named by Dodd as a Defendant, is a building and not a person who can be sued under § 1983. *Monell v. Department of Social Services,* 436 U.S. 658, 688-90 (1978); *Cage v. Kent County Correctional Facility*, No. 96-1167, 1997 WL 225647, * 1
(6th Cir. May 1, 1997) (jail is not suable entity). Thus, the Center is **DISMISSED** for plaintiff's failure to state a viable § 1983 claim against it.

Turning to the motion to dismiss [Doc. No. 47], Defendants Hospital and Stansberry contend

7

Dodd has failed to state a claim upon which relief can be granted. They claim the medical records, which were not submitted to the Court, demonstrate Stansberry was, contrary to Dodd's allegations, reasonably providing medical treatment to Dodd. Defendants claim that since Stansberry acted reasonably in treating Dodd, she cannot be found to have acted with deliberate indifference.[4] The problem with this argument is two fold. First, Dodd has alleged sufficient facts to state a claim. Second, Defendants have not submitted any facts, data, or medical records to support their contentions.

With the motion to dismiss, Defendant Stansberry presented her affidavit, which, if not excluded by the Court, requires the Court to treat the motion to dismiss as a motion for summary judgment and dispose of the motion as provided in Rule 56. Fed.R.Civ.P. 12(c). Rule 56(c) requires supporting and opposing affidavits "be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." In addition, "[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." Fed. R. Civ. P. 56 (e).

Additionally, Rule 702 of the Federal Rules of Evidence requires the testimony of an expert to be based on sufficient facts or data, to be the product of reliable principles and methods, and the witness must apply the principles and methods reliably to the facts of the case. Therefore,

> An expert opinion submitted in the context of a summary judgment

---

[4] Defendants neither addressed nor requested dismissal of the claims of retaliation or Dodd's claim premised on the deprivation of property (money taken from his prison account) in violation of his due process rights. *See Lynch v. Household Finance,* 405 U.S. 538 (1972) (Deprivations of property without due process is cognizable in a civil action under § 1983). Although a negligent deprivation of property by the government in a prison situation is not a due process violation, *see Daniel v. Williams*, 474 U.S. 327 (1986), Defendants' failure to address this claim precludes its dismissal.

> motion must be more than a conclusory assertion about ultimate legal issues. Moreover, an expert opinion must set forth facts and, in doing so, outline a line or reasoning arising from a logical foundation. Thus, an expert who supplies nothing but a bottom line supplies nothing of value to the judicial process.

*Brainard v. American Skandia Life Assur. Corp.*, 432 F.3d 655, 663-64 (6th Cir. 2005) (internal quotation marks and citations omitted).

Stansberry's conclusory affidavit does not contain facts or data to support her claim that she provided nursing care to Dodd reasonably and in accordance with the acceptable standard of professional practice for a nurse practicing in a prison during the times alleged in his complaint [Doc. No. 47-2]. For example, the affidavit does not address Dodd's specific claims that he requested but was denied his heart, high blood pressure, and cholesterol medicines while housed in the booking cell for eleven days. Stansberry's bald statement that she provided reasonable nursing care to Dodd during his incarceration provides absolutely no information about whether she administered his medications to him during his first eleven days of incarceration and, if not, why not. In addition, although Stansberry avers she reviewed Dodd's medical records, she failed to attach "[s]worn or certified copies" of the records which she referred to in her affidavit as required by Fed. R. Civ. P. 56 (e). Stansberry's affidavit does not contain reasons for her opinions and her opinions and statements are not factually supported. Consequently, the Court will exclude the affidavit and proceed to analyze Defendants' pleading as a motion to dismiss, as it is labeled.

Dodd primarily challenges the lack of medical care he received at the Center. Dodd contends Defendants were deliberately indifferent to his serious medical needs, which resulted in unnecessary and wanton infliction of pain in violation of the Eighth and Fourteenth Amendments. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). As held by the Supreme Court, medical malpractice does not

become a constitutional violation because the patient is a prisoner. *Id.* at 106. A prisoner must allege acts or omissions sufficiently harmful to evidence deliberative indifference to serious medical needs. *Id.* In addition, a prison official must know of and disregard an excessive risk to inmate health or safety to be liable. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

A denial, substantial delay, or intentional interference with medical treatment may constitute a constitutional violation. *Hudson v. McHugh*, 148 F.3d 859, 863-64 (7th Cir. 1998) (allegations that during intake Hudson told jail personnel he had epilepsy, needed daily medications, and unsuccessfully tried to receive medication by submitting requests to see medical staff were sufficient to present an Eighth Amendment claim); *Danese v. Asman*, 875 F.2d 1239, 1242-43 (6th Cir. 1989), *cert. denied*, 494 U.S. 1027 (jail officials violate the due process rights of their pretrial detainees if they "exhibit a deliberate indifference to the medical needs of the detainees that is tantamount to an intent to punish."). A prisoner can show deliberate indifference in violation of the Eighth and Fourteenth Amendments by showing that a prison official intentionally interfered with a prescribed treatment. *See Estelle,* 429 U.S. at 105; *Byrd v. Wilson*, 701 F.2d 592, 595 (6th Cir. 1983) (claim stated for refusal to give prescribed medicine and special diet); *Westlake v. Lucas*, 537 F.2d 857, 860-61(6th Cir. 1976) (claim stated for failure to treat bleeding ulcer).

In his complaint [Doc. No. 3], Dodd contends from August 5, 2005 until approximately August 25, 2005, he was not given any medication despite making several requests to see a nurse, see a doctor, receive medication, and obtain treatment for his pain. At some unidentified time, Stansberry began giving Dodd ibuprofen, but allegedly not as directed. From October 2005 until February 15, 2006, Dodd allegedly sent over twenty-four request forms to see the doctor, complaining of his increasing pain and the resulting problems with his left side. None of these

requests were answered.

Dodd complains that in addition to the pain increasing to the extent it affected the left side of his body, his "pain is so severe it has caused great mental and physical agony." Thus, Dodd's allegations satisfy the knowledge and injury requirements in that he notified jail personnel that he was taking several medications prior to incarceration and needed to continue those medications and they denied him medical attention.[5]

When Dodd's blood pressure and cholesterol medicine ran out, Stansberry reordered them. However, Dodd told her he could not afford ten dollars a month so she stopped his medications. According to Dodd, ten dollars was deducted from his prison account for the months of November and December 2005 for medications he did not receive. Dodd filed several requests to have this money returned to his account but the only response he received was the cessation of his ibuprofen until he ceased filing requests.

In addition, Dodd claims Defendants engaged in retaliation against him whenever he requested medical treatment. Dodd claims that when he submitted medical treatment request forms, his ibuprofen medication was stopped and when he stopped submitting such forms, the morning dose of ibuprofen was resumed and a few days later the evening dose was resumed. For example, Dodd claims that he sent four medical treatment requests between January 28, 2006 and February 15, 2006, to which he received no response other than the cessation of his medication on February 10, 2006. His morning dose of medication was resumed on February 13, 2006.[6]

---

[5] Dodd also contends Judge James Watson ordered a mental evaluation of him at the Hiwassee Mental Health Center. An appointment was scheduled seven weeks later, only after Dodd filed two medical request forms for an appointment six weeks after the court entered its order.

[6] Dodd signed his complaint on February 15, 2006.

There are no medical records for the Court to review and Stansberry's affidavit does not establish the dates medical treatment was provided or identify the medical treatment that was administered. All that is before the Court are Stansberry's sworn affidavit that she provided reasonable medical care to Dodd, which the Court has excluded, and Dodd's sworn complaint that Stansberry was deliberately indifferent to his serious medical needs and denied him his heart, high blood pressure, and cholesterol medications. Even if the Court considered Stansberry's affidavit, the factual disputes apparent from the sworn allegations of Dodd's complaint preclude dismissal of Dodd's claims for deliberate indifference to his serious medical needs and the related retaliation and due process claims under the circumstances.

Defendants Hospital and Stansberry also claim Dodd does not allege facts from which the Court can conclude that he suffered a physical injury as required under 42 U.S.C. § 1997e(e). To the contrary, Dodd claims Defendants deprived him of his medications which resulted in severe physical pain which affected the left side of his body [Doc. No. 3, ¶ 7]. This appears to be an allegation of physical pain and injury, and not emotional distress; thus, it is sufficient to state a claim for physical injury under 42 U.S.C. § 1997e(e). Defendants have not provided any medical records demonstrating Dodd's claims of severe pain and injury are unsupported.

Since Dodd's allegations state a claim for deliberate indifference to his serious medical needs, he will be permitted to proceed on his medical claims. In light of the foregoing, the Hospital and Stansberry's motion to dismiss [Doc. No. 47] is **DENIED**. Dodd is forewarned that to be successful at trial he will have to produce proof supporting his allegations.

## V.  Conclusion

For the reasons set forth herein, Dodd's motion to strike/withdraw his affidavit [Doc. No.

36] is **GRANTED**. Further, all claims against the Center will be **DISMISSED** *sua sponte,* pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted under 42 U.S.C. § 1983. In addition, Defendants' motion to dismiss Dodd's medical claims [Doc. No. 47] is **DENIED** and all parties will proceed to trial on all of Dodd's claims on September 10, 2007, at 9:00 a.m. in the Fourth Floor Courtroom of the U.S. Courthouse located at 900 Georgia Avenue in Chattanooga, Tennessee.

    A separate order will enter.

*s/Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE